# CASES

# APPELLATE COURTS OF ILLINOIS.

SECOND DISTRICT—DECEMBER TERM, 1897.

## Jacob W. Rausch v. D. R. Anderson.

1. SLANDER AND LIBEL—*Privileged Communications.*—No action for slander or libel can be maintained against a judge, or one exercising judicial functions, for anything he may write or say in his judicial capacity upon the determination of a cause or matter pending before him, but it can not be held that after the judicial duty is performed and ended, the person so acting may wantonly or maliciously assail and defame the character of a party or witness, publicly or privately, and shield himself behind the defense of privilege.

2. SAME—*Privileged Communications—Statements by a County Superintendent of Schools of Reasons for Revoking a Certificate.*—A county superintendent of schools has the right in good faith and for justifiable motives to communicate to a school board his reasons for revoking the certificate of a teacher employed by them, and such a communication is conditionally privileged.

3. SAME—*Privileged Communications—Burden of Proof Shifted.*— The doctrine of privileged communications merely changes the rule of evidence, rebutting the presumption of malice arising from the speaking of defamatory words which would otherwise be actionable *per se*, and imposing upon the injured party the burden of proving actual or express malice, proof of which will defeat the defense of privilege.

4. SAME—*Certain Evidence Held Admissible to Defeat the Defense of Privileged Communication.*—In an action for slander, where the defense of privileged communication is interposed and relied upon, the court holds that it is competent for the plaintiff to prove facts and circumstances and statements by the defendant, inconsistent with such defense; and that a statement by him that "I don't make these charges as a public officer, I make them as a private citizen," is admissible.

(526)

Rausch v. Anderson.

5. Same—*Certain Evidence Held Admissible as Tending to Show Malice.*—The court holds that certain statements made by the defendant in an action for slander should have been allowed to go to the jury upon the question of actual malice, and as bearing upon the motives of appellant in making the charges complained of.

6. Same.—*Proof of Words Not Charged as Showing Malice.*—Other words imputing the same charge, though not laid in the declaration, are admissible for the purpose of showing malice.

**Trespass on the Case,** for slander. Appeal from the Circuit Court of Grundy County; the Hon. H. M. Trimble, Judge, presiding. Heard in this court at the December term, 1897. Reversed and remanded. Opinion filed May 23, 1898.

E. L. Clover and Cornelius Reardon, attorneys for appellant.

The statute of this State only empowers the county superintendent to revoke the certificate of a teacher for immorality, incompetency or other just cause, and does not empower him to call a meeting in a public building and slander his good name and destroy his reputation. Hurd's Statutes, Chap. 122, Sec. 20.

The speaking of equivalent words is not enough to support an action of slander and unless the plaintiff can prove the speaking of the words laid in the declaration or so many of them as will establish the cause of action his cause must fail; but the words imputing the same charge, though not laid in the declaration, are admissible for the purpose of showing malice. Schmisseur v. Kreilich, 92 Ill. 347.

The speaking of other words, if they have any legitimate bearing upon the disposition of the defendant's mind at the time of uttering the slander complained of, is admissible to show the malice of the defendant, and it is immaterial whether the other words found are themselves actionable or not. 13 American & E. Ency. of Law, 429; Severance v. Hilton, 32 N. H. 289; Symonds v. Carter, 32 N. H. 458.

Privileged communications are of two kinds: (1) absolute and (2) qualified. Absolute privileged communications come under three heads: (1) parliamentary proceedings, (2) judicial proceedings, (3) naval and military affairs, etc. Odgers, L. & S., 184; White v. Nicholls, 3 How. (U. S.) 266.

If Anderson's words can possibly come under the head of privileged they are only qualifiedly so for the reason it might have been of general interest to the community to know why he had revoked Rausch's certificate. Nix v. Caldwell, 81 Ky. 293; Marks v. Baker, 28 Minn. 162; Cooley on Torts, 271.

But in order that this protecting mantle of the law might be thrown around him, the communication must have been made *bona fide* to a person or persons having a corresponding interest or duty. King v. Patterson, 49 N. J. L. 417; Whiteley v. Adams, 15 C. B. N. S. (119 Common Law Rep.) 392; Briggs v. Garrett, 2 Cent. Rep. (Pa.) 364.

And it can be made only where it is made honestly and in good faith for the common good. Wharton v. Wright, 30 Ill. App. 343; Wright v. Wright, 30 Ill. App. 349.

And under such circumstances as to negative the presumption of malice. Elam v. Badger, 23 Ill. 498.

And based upon reasonable and probable cause; a malicious lie is not privileged. Briggs v. Garrett, 2 Cent. Rep. (Pa.) 364.

Such reasonable or probable cause must be of sufficient force and character (charging larceny) as would justify a prosecution for the alleged crime. Neeb v. Hope, 111 Pa. St. 145, 2 Cent. Rep. 71; Conroy v. Pittsburgh Times, 11 L. R. A. 725.

And when made to a public body, that body must have some duty to perform and power to act upon the information derived. Townshend's S. & L., Sec. 235.

From the speaking of actionable words malice is implied. Hosley v. Brooks, 20 Ill. 115; Flagg v. Roberts, 67 Ill. 485; Hintz v. Graupner, 138 Ill. 166.

But this does not prevent proof of actual malice—either to aggravate the damages (Fry v. Bennett, 28 N. Y. 330, True v. Plumley, 36 Maine, 466), or to defeat the defense of privileged publication. Townshend's S. & L., Sec. 392; Babonneau v. Farrell, 15 C. B. (80 Common Law Rep.) 360; King v. Root, 4 Wend. 113; Garrett v. Dickerson, 19 Md. 418.

LINCOLN & STEAD, attorneys for appellee.

We concede that the rule as to qualified privilege as announced by the early decisions of the courts was substantially as contended for by appellant's counsel. Under the old rule the privilege extended only to communications made *bona fide* upon a subject-matter in which the party communicating had an interest, or in reference to which he had a duty to a person having a corresponding interest or duty.

The tendency of modern courts of our own and other States has uniformly been toward a more liberal construction. The rule to-day is that the qualified privilege extends to all communications made in good faith, in the performance of a duty legal or moral—to all statements made to protect one's person, property or reputation, and to all statements made to subserve the public good.

"Every one who believes himself to be possessed of knowledge which, if true, does or may affect the rights and interests of another, has the right in good faith to communicate his belief to that other. He may make the communication with or without any previous request, and whether he has or has not personally any interest in the subject-matter of the communication, and although no reasonable or probable cause for the belief may exist. The right is founded on the belief." Townshend on Slander, Sec. 241.

"Communications made in the discharge of a duty arising from a confidential relationship existing between the parties are qualifiedly privileged." Odgers on Slander, 209, 210.

"The relationship exists whenever any trust or confidence is reposed by one in the other." Odgers on Slander, 210; Young v. Richardson, 4 Brad. 364.

"Where a letter was written by an inhabitant of a school district to the school committee, making charges against a school teacher, it was held that a confidential relationship existed and that the communication was conditionally privileged." Bodwell v. Osgood, 3 Pick. 379.

"The defendant at a town meeting charged the plaintiff with illegal voting. Held, that the voters of the town had

such an interest in the subject-matter as to bring the case within the rule of a qualified privilege." Bradley v. Heath, 22 Am. Dec. 418.

"A sentence of ex-communication from a church was read by the pastor to his congregation subsequent to the trial. Held, conditionally privileged." Farnsworth v. Storrs, 5 Cush. 412.

"A communication charging a person with bad moral character and unfit to teach school was made to a superintendent by persons interested in the school within his jurisdiction, for the purpose of preventing the issuance of a license. Held, privileged." Wieman v. Mabee, 40 Am. Rep. 477.

"A communication is privileged within the rule when made in answer to one having an interest. It will be privileged if volunteered when the party to whom it is made has an interest in it, and such party stands in such relation to him as to make it a reasonable duty, or at least probable, that he should give the information." Crane v. Waters, 10 Fed. Rep. 619; Locke v. Bradstreet Co., 22 Fed. Rep. 771; Erber v. Dun & Co., 12 Fed. Rep. 526.

"If the communication is fairly warrantable by any reasonable occasion or exigency, the communication is protected for the common convenience and welfare of society." Briggs v. Garrett, 111 Pa. St. 404.

"It is sufficient to confer the privilege that the matter is of public interest to the community." Smith v. Higgins, 16 Gray, 251; Marks v. Baker, 28 Minn. 162.

The occasion being one of qualified privilege it was incumbent upon the plaintiff to prove that appellee in uttering the charges was actuated by express malice. Gilmer v. Eubank, 13 Ill. 271; Wharton v. Wright, 30 Ill. App. 343; Cristman v. Cristman, 36 Ill. App. 567; Bradley v. Heath, 22 Am. Dec. 418; Townshend on Slander, Sec. 209.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case for slander, brought by

appellant against appellee, who was superintendent of schools of Grundy county, while appellant was principal of the high school at the village of Mazon in the same county.

In August, 1894, appellee examined appellant as to his qualifications, and issued to him a teacher's certificate of the first grade, and afterward, on September 3, 1896, appellee issued to appellant a new certificate of the first grade, without further examination.

Appellant was engaged in teaching his third year in the schools of Mazon, when, on Saturday, December 5, 1896, appellee revoked his certificate and informed him of the reasons therefor. Appellant communicated to the school board the fact that his certificate had been revoked, but at their request taught the school on the following Monday and during the forenoon of Tuesday, on which day appellee visited Mazon, and at a public meeting held in the school house on the afternoon of that day appellee publicly gave his reasons for revoking appellant's certificate. It is for the language used on that occasion that this suit is brought. The defamatory words charged in the declaration (omitting the innuendoes) are as follows: "He stole two books;" "J. W. Rausch stole two books." "He stole two books from the Grundy County Teacher's Library Association." "I found one of the books in his possession." "I went to the library and found that he had never put these books in the library, and that shows that he intended to steal the books when he first received them as a director of the library."

To the declaration appellee filed six pleas, the first being the general issue, the second, third and fourth were pleas of justification, while the fifth and sixth pleas averred that the occasion upon which the words were spoken, was in law privileged. A demurrer being sustained to the fifth and sixth pleas, appellee filed two amended pleas and an additional plea, which are designated in the abstract as the "amended 5th plea," "amended 6th plea," and "7th plea." That it may be seen just what appellee's defense was, we here set out his fifth plea in full, which was as follows:

" And for a further plea in this behalf, the defendant says that the plaintiff ought not to have his aforesaid action against him, the defendant, because he says that the defendant, before and at the time of the committing of said supposed grievances in the said declaration mentioned, was the duly elected and qualified superintendent of schools in and for the county of Grundy in the State of Illinois; and was then and there in the discharge of his duties as such superintendent of schools; and the said plaintiff was then and there a teacher in district No. 7, of the township of Mazon in said Grundy county; and was then and there teaching as a teacher of public schools in said district, under a certificate issued to him by the defendant herein, as such county superintendent of schools. And the defendant further avers that before the time of the supposed grievances in said declaration mentioned, and while the defendant was such county superintendent of schools, and said plaintiff was teacher in district No. 7, the said plaintiff was accused of the embezzlement and larceny of two certain books, each of the value of one dollar, the personal property of the Grundy County Teacher's Library Association; and which said charge then and there affected the good moral character and qualification of said plaintiff as such teacher of the public schools; and the defendant avers that he then and there, in his official capacity as such county superintendent of schools investigated said accusation, and interviewed said plaintiff in regard thereto; and then and there personally ascertained in the presence of the said plaintiff, that said plaintiff had withheld said books from said Grundy County Teacher's Library Association, with unlawful intent then and there to convert the same to his own use, and with intent to steal the same; and he then and there found one of the said books concealed by said plaintiff, about the premises of him, the said plaintiff; and that thereupon, and by reason of such immoral conduct on the part of the said plaintiff, he had then and there revoked the certificate of said plaintiff as by law he was authorized to do, and had exercised his authority in that regard conscientiously, with the sole

desire to do his full duty, and promote the interests of the public, and the interests of the public schools of said Grundy county; that thereupon said plaintiff still persisted in his rights to fill the position of teacher in said district No. 7, notwithstanding such revocation of his certificate, and was then and there endeavoring, publicly and privately, to influence the board of directors and the public of said district No. 7, that the defendant had acted with selfish and improper motives regarding the revocation of such certificate; and was then and there endeavoring to obtain from this defendant a renewal of his said certificate, so that he might continue as such teacher of the public schools in said county of Grundy; and that thereupon the board of directors of said district No. 7 requested the defendant to then and there state his reasons for the revocation of such certificate; and said board of directors then and there met together for the purpose of hearing the statements of this defendant for his official action in so canceling the certificate of the plaintiff, at which meeting the plaintiff was present, and then and there took part in the investigations then and there held, touching the moral conduct of him, the said plaintiff; and the defendant was then and there in his official capacity as such county superintendent of schools, to make known his reasons for the revocation of such certificate, and for his refusal to issue a new certificate to said plaintiff; wherefore the defendant, at same time and place mentioned in said declaration, then and there spoke and published of and concerning the plaintiff, the said several words in the said declaration mentioned, as he was privileged and as it was lawful for him to do, for the cause aforesaid; and this the defendant is ready to verify, wherefore he prays judgment if the plaintiff ought to have his aforesaid action against him," etc.

The amended sixth plea was substantially like the amended fifth plea, except that it further alleged that after the revocation of the license, the plaintiff was endeavoring to convince the public in said town of Mazon, that appellee, in revoking plaintiff's certificate, had acted from personal and

malicious motives only, and that plaintiff and his friends were circulating statements to that effect, and avers that he, the defendant, spoke said words in defense and justification of his official conduct, and with no motive save to state his reasons for revoking said license and for his refusal to issue a new license.

The seventh plea was not essentially different from the amended sixth plea. A demurrer to these pleas was overruled, and the cause came on for trial by a jury. At the close of the plaintiff's testimony, the court, on motion of defendant's counsel, gave to the jury the following instruction:

"The court instructs the jury that the plaintiff has not established a cause of action in this case against the defendant, and that you will find the defendant not guilty."

Whereupon the jury returned a verdict of not guilty. The court overruled a motion for new trial and entered judgment against appellant for the costs of suit, and he brings the case here by appeal.

He insists that the court erred in directing a verdict for the defendant; also in its rulings upon the admission and rejection of evidence, and in overruling his motion for a new trial.

Many witnesses were introduced to prove the speaking of the defamatory words charged in the declaration, and while there was the usual difficulty in getting them to testify to the exact words as laid, it is quite clear that several of them swore to the precise words charged, so that, upon that point, there was certainly evidence sufficient to go to the jury. We do not understand counsel for appellee to deny that the words charged are *prima facie* slanderous and actionable, but they insist that the occasion, and the circumstances under which they were spoken, rendered them absolutely privileged; and this was evidently the ground upon which the court directed a verdict for appellee.

The contention is, that in revoking the certificate of appellant, and giving his reasons therefor, appellee acted in a judicial capacity, and is therefore not responsible for what

Rausch v. Anderson.

he may have said in relation thereto, on the principle, as laid down by the authorities, that "no action for slander or libel can be maintained against a judge, or one exercising judicial functions, for anything he may say or write in his judicial capacity upon the trial, or upon the determination of a cause or matter pending before him; if improper, it may be a ground for his impeachment, or for an application for his removal, but not for an action of slander or libel. * * * No public officer is responsible, in a civil suit, for a judicial determination, however erroneous it may be and however malicious the motive which produced it." Townshend on S. & L., Sec. 227.

It is to be observed, however, that this exemption appears only to apply to what is said or written by the judicial officer "upon the trial, or upon the determination of a cause or matter pending before him, and while he is acting in a judicial capacity." The reasons for the rule are obvious and need not be discussed. But we apprehend it has never been held that after the case is determined and the judicial duty is performed and ended, a judge may wantonly or maliciously assail and defame the character of a party or witness in the case, publicly or privately, and shield himself behind the defense of privilege. When acting as a private individual, we suppose a judge to be just as liable to an action for slander as any one else. And by these remarks we do not intend to be understood as intimating any opinion as to the motives of the appellee in using the language concerning the appellant charged in the declaration, but simply make them as a basis for examining the question as to whether they were absolutely privileged, as claimed by appellee. If appellee had good grounds for believing the charge he made against appellant, that would be a sufficient reason for revoking the certificate; whether that was done in a judicial or ministerial capacity we do not deem it important to discuss. And we are of the opinion appellee had the right, in good faith and for justifiable motives, to communicate to the school board his reasons for revoking the certificate, and that such a com-

munication would have been at least conditionally privileged. Courts generally are not inclined to extend the doctrine of absolutely privileged communications (Cook v. Hill, 3 Sandf. 341), nor are we. In our opinion the trial court was in error in holding the speaking of the words complained of, under the circumstances shown by the evidence, absolutely privileged.

Townshend says, in his work on slander and libel above referred to : " Instead of the expression 'privileged communication,' it is more correct to say that the communication was made on an occasion which rebuts the presumption of malice." (Sec. 209.) And in Wright v. Woodgate, 2 Crompton, Meeson & Roscoe, 573, it is said : " A privileged communication means nothing more than that the occasion of making it rebuts the *prima facie* inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and throws upon him the *onus* of proving malice in fact." (Quoted approvingly in White v. Nicholls, 3 How. (U. S.) 266.)

The Supreme Court of this State in Gilmer v. Eubank, 13 Ill. 271, say : " There is a class of cases where the occasion of the speaking of the words may, without regard to their truth or falsity, afford an excuse or justification to the party; such, for instance, as the statements of a master respecting the character of a servant; communications addressed to the appointing power, relative to the conduct of a public officer, or concerning the qualifications of an applicant for office; expressions used in the course of a judicial proceeding by a judge, attorney, witness, juror or party; and communications made to others in confidence, or in the way of admonition or advice. In such cases an action can not be sustained without proof of actual malice. If the party acted from honest motives and for justifiable purposes, the law, from reasons of public policy, excuses him. But he is not permitted, under the pretense of discharging a duty to himself or society, to inflict an injury to the reputation of another. If he makes use of the occasion for the purpose of traducing another, the occasion will not protect him, and he

will be answerable for the consequences." Again in Elam v. Badger, 23 Ill. 498, it is said: "Many cases might be referred to, illustrating the general principle that a publication warranted by an occasion apparently beneficial and honest, is not actionable, in the absence of express malice. But in all these cases, where the occasion is sufficient to raise the question of actual malice, the doctrine must be understood with this limitation, that the times and mode of the speaking the words are suited to the occasion. No speaking of slanderous words can be justified which is not warranted by the occasion and circumstances."

In nearly all the adjudicated cases on this subject the principle seems to be recognized that proof of express malice will defeat the defense of privilege; that the doctrine of "privileged communication" merely changes the rule of evidence, rebutting the presumption of malice arising from the speaking of defamatory words which would otherwise be actionable *per se*, and imposing upon the injured party the burden of proving actual or express malice. Whether such malice did or did not actuate and induce the publication is a question for the determination of the jury. (White v. Nicholls, 3 How. (U. S.) 266.) Applying these principles to the case at bar, we are bound to hold that appellant has not had a fair trial.

Beyond the mere speaking of the precise words charged in the declaration, he was not permitted to prove anything whatever of what transpired or was said by appellee at the meeting when the alleged slanderous words were spoken. After several witnesses had sworn to the uttering of the precise words charged in the declaration, counsel for appellant offered to prove that at the same public meeting appellee said, "I want the opportunity and the chance of meeting J. W. Rausch in the Circuit Court of Grundy County, where I may prove that he is a thief and a rascal, and show him up to the people of Grundy county." That a witness then said to appellee, "Yes, you would like to get into court to show him up because you are a public officer and your suit would be tried at the public expense

and it would finally fall on us tax payers to pay the bill."
And that appellee then replied in substance, " No, I don't
make these charges as a public officer; I make them as a
private citizen and hold myself personally responsible for
everything I have said, and I go into court as a private
citizen and not as a public officer; I will defend any suit for
damages which Rausch may bring against me, growing out
of what I have said, as a private individual and pay my own
expenses."    But the court rejected the offer and refused to
admit the evidence.    In this we think the court was in error.
The defense of " privileged communication " being inter-
posed and relied upon, it was certainly competent for appel-
lant to prove facts and circumstances, as well as statements
of appellee, inconsistent with such defense.    It was also
proper evidence to go to the jury upon the question of
actual malice, and as bearing upon the motives of appellee
in making the charges he preferred against appellant.
Again, the words complained of imputed to appellant the
crime of larceny, and the assertion by appellee that he could
prove appellant was a thief, it seems to us was but a repe-
tition of the charge—not in the language complained of in
the declaration it is true, but it was using words of like im-
port, although not so specific, and this we understand to be
always permissible for the purpose of showing malice.
(Schmisseur v. Kreilich, 92 Ill. 347; Ransom v. McCurley,
140 Ill. 626.)

In Rustell v. Macquister, 1 Camp. (Nisi Prius) 49, it was
held that, although no evidence can be given of any special
damage not laid in the declaration, yet that any words, or
any act of the defendant, is admissible to show *quo animo*
he spoke the words which are the subject of the action. (2
Starkie on Slander, 56; Shock v. M'Chesney, 2 Yeates (Pa.)
473; Wallis v. Mease, 3 Binney (Pa.) 546.)

Under the circumstances of this case we think the evidence
should have been admitted.    No attempt being made to
justify the charges by proof that they were true, and the
whole defense resting upon the question of privilege, the
appellant should have been permitted to prove malice if he

could, and the defense should have gone to the jury for their determination upon the evidence and under proper instructions. Counsel for appellee, as well as the court below, appear to have laid some stress upon the proposition that appellant knew about the public meeting called for the purpose of allowing appellee to state his reasons for revoking the certificate, which meeting they contend appellant must have known of and consented to, but as to this there seems to be some dispute. However the fact may be, we do not regard it as of controlling importance in the determination of the questions before us. In the end, appellee's motives in making the charges must be judged by what was said and done by him at the meeting, and as we have seen, beyond the speaking of the precise words charged in the declaration, no proofs were permitted to be made. Our conclusion is that the court below confined the proofs of the appellant within too narrow limits, and applied well known rules of law with too great strictness, whereby he was deprived of a fair opportunity to make out a case if he could.

For the error in excluding proper evidence, and peremptorily directing a verdict in favor of appellee, the judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.