THE CHICAGO CITY RAILWAY COMPANY

*v.*

PETER NELSON.

*Opinion filed April 17, 1905—Rehearing denied June 8, 1905.*

1. NEGLIGENCE—*question of contributory negligence ordinarily one of fact.* The question of contributory negligence is one of fact to be submitted to the jury, unless the undisputed evidence is so conclusive that all reasonable minds would reach the same conclusion on the question.

2. INSTRUCTIONS—*when instructions as to burden of proof are not erroneous.* Instructions authorizing a recovery if the jury find

the evidence bearing upon "plaintiff's case" preponderates in his favor, "although but slightly," are not erroneous in using the words quoted.

3. Special interrogatories—*counsel should have opportunity to examine special interrogatories.* Proper practice requires that special interrogatories prepared by the court should be submitted to counsel for examination before they are given to the jury, but a failure to observe such requirement does not necessarily constitute reversible error.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Philip Stein, Judge, presiding.

This is an action on the case by appellee, against appellant, to recover for personal injuries sustained by him on December 16, 1901, by the alleged negligence of appellant in the operation of an electric car going south on Halsted street, near Thirty-eighth place, in the city of Chicago.

The evidence is very conflicting as to the exact manner in which the accident occurred, but on behalf of appellee it tends to show that on the day of the accident appellee was in the employ of a man by the name of Crowe, a house mover, and had been working in front of a house on the west side of Halsted street, near Thirty-eighth place. Halsted street extends north and south and Thirty-eighth place crosses it at right angles, east and west. Certain house mover's blocks about four feet in length and a timber some eighteen or twenty feet long, 8x8 in size, had been left in front of the building, and appellee was sent to remove them. He drove in front of the building where the blocks were, with two horses hitched to a wagon. The horses faced north and the rear end of the wagon was towards the south, at a distance of from seventy-five to one hundred feet from Thirty-eighth place. In front of the premises appellant operated a double track street railway, the west rail of the double track running north and south on Halsted street being from ten to fifteen feet east of the curb-stone on the west side of the

street. West of the curb-stone was a sidewalk about ten feet wide, and west of that a platform about three feet wide and about six inches above the sidewalk, extending back to the building. The 8x8 timber which appellee was attempting to move was leaning against the building to the west of the sidewalk, and it extended out into a lot, the west front of which was vacant for about sixteen feet north of the building. A picket fence extended north from the front of the building, and in this fence there was a gate opening on to the sidewalk. The timber was too heavy to be handled by appellee alone, and when he got ready to move it he called a man by the name of Haggerty to assist him. They took the timber down from its leaning position, appellee taking one end of it upon his left shoulder and Haggerty the other, also upon his left shoulder. About one and a half to two feet extended over appellee's shoulder in front of him and about the same length extended from Haggerty's shoulder to the rear. With appellee in front they carried the timber in an easterly direction through the gate across the sidewalk on to the car track north of the horses' heads. When appellee got between the rails of the south-bound track he turned to the south and walked to a point some distance south of the rear end of his wagon, when he turned to cross in a south-westerly direction towards the sidewalk. Haggerty followed, either between the rails of the south-bound track or near the west rail. About the time appellee got upon the sidewalk and as Haggerty was about to leave the space between the rails, or when he was about one foot west of the west rail of the south-bound track, a car came from the north at a rapid rate of speed without ringing a bell or giving any warning, and struck the easterly end of the timber with such force that appellee and Haggerty were both thrown to the ground and appellee received the injuries for which this suit is brought. At the time of the accident the horses and wagon stood about midway between the west rail and the curb, there being two or three feet of space between them and the west rail. When

the car struck the timber it was in substantially an east and west line, at right angles with the track. Appellee fell on the sidewalk near the building, Haggerty being close to the west rail of the track.

The testimony on behalf of appellee is contradicted in many material respects by that on behalf of appellant. It tends to show that the horses and wagon were from four and a half to eight feet west of the west rail, and as the car approached from the north appellee and Haggerty were walking along the track some three or four feet west of the west rail; that the car approached slowly, the bell ringing, and at a speed varied by the witnesses from a slow walk to six miles per hour; that appellee, after passing the south end of his wagon, began to turn towards the west, and just after the front part of the car had passed Haggerty, the end of the timber projecting over his shoulder struck the side of the car just under the window, and not in front, as testified to by appellee's witnesses. The exact point at which the car struck the end of the timber is placed by the various witnesses at about the second window, or two or three feet from the front,—about as far back as the middle of the car, which was about twenty-nine feet and six inches long. A short time after the accident the car was inspected, and there was a dent in the side, in the panel under the second window from the front end. The side of the car was jammed in. It is also claimed by appellant that appellee fell in the street near the curbing, and not on the sidewalk, and the timber, after it fell to the ground, lay in a north-easterly and south-westerly direction, the south end being about seven or eight feet from the railroad track, and not on the sidewalk beyond the curb, and the north end was about two and a half feet from the west rail; that the wagon stood near the curb line, and there were no timbers between it and the curb. After the car struck the timber it ran a distance variously estimated by witnesses at from forty to one hundred feet.

At the close of all the evidence a motion was made by appellant to instruct the jury to find for the defendant, which motion was overruled and a judgment was rendered in favor of appellee for $1600, which has been affirmed by the Appellate Court.

WILLIAM J. HYNES, JAMES W. DUNCAN, and C. LEROY BROWN, (MASON B. STARRING, of counsel,) for appellant.

FRANCIS J. WOOLLEY, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The first ground of reversal is stated by counsel for the appellant substantially as follows: At the time of the injury appellee and Haggerty were not fellow-servants, but Haggerty was the servant of appellee; that both were guilty of contributory negligence, hence appellee is barred from recovery; that even though appellee was not himself guilty of contributory negligence, Haggerty, as his servant, was negligent in throwing the end of the timber against the side of the car after the front of it had passed, and such contributory negligence on the part of Haggerty is a bar to appellee's right to recover; that it was negligence to carry the timber on the track when it could have been taken down the sidewalk and thus avoided the danger; that by going into a hazardous place their degree of caution should have increased in proportion to the additional risk assumed; that these facts are proven by undisputed evidence, and the contributory negligence thus becomes a question of law for the court.

The question of contributory negligence is ordinarily a question of fact for the jury, and it only becomes a question of law where the undisputed evidence is so conclusive that the court could arrive at no other conclusion than that the injury was the result of the negligence of the party injured. (*Beidler* v. *Branshaw,* 200 Ill. 425; *Werk* v. *Illinois Steel Co.* 154 id. 427; *North Chicago Street Railroad Co.* v.

*Cossar,* 203 id. 608.)   If there may be a difference of opinion on the question, so that reasonable minds will arrive at different conclusions, then it is a question of fact for the jury.   It appears from the facts above stated that there is an irreconcilable conflict in the evidence as to many of the material facts.   There is a dispute as to the exact manner in which the accident happened, as to the exact position of the parties, as to the speed of the car, as to whether the bell was rung, as to the opportunity of the appellee to see the car approaching, and as to the opportunity of the motorman to see appellee and Haggerty on the track, and from such conflict we cannot say that reasonable minds could have arrived at but one conclusion as to the alleged contributory negligence of appellee and Haggerty.   It was a question of fact, and not of law, and the court therefore properly refused to take the case from the jury.

Complaint is next made of the instructions given to the jury.   It is contended that the modification of the sixteenth instruction given on behalf of appellant was error.   It is as follows:

"If the jury believe, from the evidence, that ordinary care on the part of the plaintiff for his own safety required him, under all the facts and circumstances in evidence, before taking, if he did take, such a position that a part of the timber which he was carrying would come in the course of the car, to look and ascertain whether or not a car was approaching; and if the jury further believe, from the evidence, that the plaintiff could *or would* by the exercise of ordinary care have looked and ascertained whether or not a car was approaching along said track; and if the jury further believe, from the evidence, that he did not so look and ascertain whether a car was so approaching, and that he was injured in consequence and because of his failure to so look and ascertain whether or not a car was so approaching, if he did so fail to look and ascertain, *and that he did not exercise ordinary care for his own safety just before and at the time of*

*the accident complained of, and was injured by reason thereof,* then the court instructs the jury to find the defendant not guilty."

The modification complained of consisted in the addition of the italicized words as above. It is claimed by appellant that without the modification the instruction submitted to the jury whether ordinary care on the part of the plaintiff for his own safety required him to look and ascertain whether a car was approaching, and whether or not he could, by the exercise of ordinary care, have looked and ascertained the approach of the car, and whether or not he did look, and whether or not he was injured in consequence of his failure to look, and that by the modification the whole force of the instruction was destroyed, and the jury were told that although they might believe that ordinary care required him to look, and that he could have looked but omitted to do so, still such conduct did not amount to a failure to exercise ordinary care. We do not think the modification materially changed the meaning of the instruction. As given it was more favorable in its terms to the appellant than the facts would justify. There was no evidence in the record upon which it could be fairly based, the undisputed evidence being that appellee did look for a car before going on the track.

Complaint is further made of the ninth instruction given on behalf of the plaintiff. It informed the jury that while the burthen of proof is upon the plaintiff to prove his case by a preponderance of the evidence, still the proof need not be the direct evidence of persons who saw the occurrence, "but facts may also be proved by circumstantial evidence,— that is, by proof of circumstances, if any, such as to give rise to a reasonable inference in the minds of the jury based upon the proof of the truthfulness of the facts alleged and sought to be proved, provided such circumstances, together with all the other evidence bearing on such facts, constitute a preponderance of the evidence." In attempting to define circumstantial evidence this instruction is awkwardly drawn,

but we do not think the jury could have been misled by it to the injury of appellant.

It is next insisted that the court erred in giving the fourth and eighth instructions on behalf of appellee. These instructions told the jury that the plaintiff is not bound to prove his case beyond a reasonable doubt, but is only bound to prove it by a preponderance of the evidence, and if the jury find that the evidence bearing upon plaintiff's case preponderates in his favor, although but slightly, it would be sufficient to justify a finding of the issues in his favor. It is insisted that the use of the term "plaintiff's case," and authorizing a verdict for plaintiff if he proves "his case," was erroneous, for the reason that the words were not qualified by any reference to the allegations of the declaration. We do not regard the objection of substantial merit. (*North Chicago Street Railroad Co.* v. *Polkey,* 203 Ill. 225.) That part of the eighth instruction which tells the jury that if the appellee's evidence preponderates in his favor, although but slightly, yet the verdict must be for appellee, is also criticised. We have held that such a statement in an instruction is not reversible error. *Donley* v. *Dougherty,* 174 Ill. 582.

Objection is urged to other instructions given on behalf of the plaintiff, but we are of the opinion that they were substantially correct, and that those given at the request of the defendant fully covered the law as to its defense. We do not deem it necessary to extend this opinion by commenting further upon those objected to. As we have frequently had occasion to remark in other cases, too many instructions were asked and given on either side.

The record shows that the court submitted to the jury special interrogatories to be answered by it, and that appellant had no opportunity to examine them before their submission. It is insisted that this was reversible error, and the case of *Pittsburg, Cincinnati, Chicago and St. Louis Railway Co.* v. *Smith,* 207 Ill. 486, is cited in support of the contention. In that case we fully considered the question as

to special interrogatories being submitted by the trial court to counsel, and we there held that the proper practice was to submit the questions to both sides, but that such neglect did not necessarily constitute reversible error. Those submitted in the present case covered fully the question of the negligence of appellant and the contributory negligence of appellee. We are unable to see how appellant was prejudiced by the failure to submit them to counsel.

Upon a consideration of the whole case we have discovered no reversible error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*