## RALSTON PURINA CO. v. BANSAU.
### No. 5198.

Circuit Court of Appeals, Seventh Circuit.
Nov. 2, 1934.

John W. Freels, of Chicago, Ill., for appellant.

Shelton F. McGrath and Harry Dale Morgan, both of Peoria, Ill., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

Appellee instituted her common-law action to recover damages for the wrongful death of her intestate in the circuit court of St. Clair county, Ill. Appellant is a Missouri corporation, while appellee is a citizen of Illinois. Appellant removed the cause to the United States District Court on the ground of diversity of citizenship. After the settlement of the issues, the cause was submitted to a jury, which returned a verdict in favor of appellee, in the sum of $5,000. A motion for a new trial was denied and judgment entered upon the verdict, from which this appeal is prosecuted.

The action was brought to recover damages occasioned by the death of William R. Bansau, appellee's intestate, on September 2, 1931, due, it was alleged, to the negligence of defendant in the operation of a truck. On that day a gasoline motor train of the Chicago & Alton Railroad had a collision with a truck just west of Streator, Ill., where the tracks of that railroad cross at grade state route No. 17. The latter is a concrete highway, 20 feet in width, which runs east and west; the railroad runs northeast and southwest and crosses the highway at an angle of 45 degrees.

The truck was driven by G. M. Flint, and was traveling from west to east toward Streator on the hard road. The train was coming from Streator, destined for Peoria, and the truck approached it from the right. Bansau was the engineer operating the train, which consisted of two cars and was driven by a gasoline motor. The front end of the first car was circular in form, with the engineer's seat on the right-hand side. The second car was for passengers. As the train proceeded in a southwesterly direction, approaching the state highway, the bell was ringing and the usual crossing blasts of the whistle were blown. The usual stop signs were posted about 150 feet from, and on either side of, the track on the highway. There were also posted at the railroad crossing the usual railroad crossing cross-arm signs. It had rained that day, and the concrete slab of the highway was somewhat slippery. The driver of the truck said he did not see the approaching train until he was about 50 feet from the track and the train was 75 feet from the highway. He put on his brakes, the truck slipped and turned, hitting the right side of the front end of the motorcar, injuring the engineer to the extent that he died shortly thereafter.

The declaration contains five counts. The first charges defendant, through its agent or servant, with negligence in the management, operation, and control of the motor vehicle. The second charges defendant with violating the Illinois statute requiring a person controlling the movement of any self-propelled vehicle to come to a full stop before crossing a railway where a highway "Stop" sign is posted. The third charges that at the time and place in question appellant's agent or servant drove the car at a high dangerous, and excessive rate of speed, at the rate of, to wit, 50 miles an hour. The fourth count is similar to the second. It charges that appellant failed to stop said motortruck in obedience to the law and the stop sign posted on either side of the highway before reaching the railroad track. The fifth count charges that the Illinois Commerce Commission had designated the intersection in question as an "extra hazardous" grade crossing prior to the accident, and caused to be maintained at or near the crossing the standard "Stop" signs on both sides of the track, as provided by statute, and that appellant had so driven the motortruck into the train as to cause it to come into violent collision with the train, injuring the engineer and causing his death.

Appellant filed four pleas. The first was the general issue; the second, a plea of contributory negligence; the third, a denial of ownership or control of the truck referred to and that it caused the injuries complained of, either personally or through any servant or agent; and the fourth alleged that at the time in question both the plaintiff and defendant were operating under the provisions of the Illinois Workmen's Compensation Act (Smith-Hurd Ann. St. Ill. c. 48, § 138 et seq.) ; that by reason thereof the statutory right of action of plaintiff to recover had been abrogated and she had no direct action against defendant.

Seventeen assignments of error were filed, many of which are of such a general nature as not to warrant consideration here. The contested issues and errors relied upon may be described as follows: (1) The failure of the trial court to grant a new trial; (2) the error of the court in refusing five separate peremptory instructions tendered at the close of plaintiff's evidence, and four separate peremptory instructions tendered at the close of all of the evidence, a peremptory instruction having been given as to count 5; (3) failure to find plaintiff's intestate guilty of contributory negligence as a matter of law; (4) refusal to direct a verdict in favor of defendant on its second plea; (5) that both parties were working under the Illinois Workmen's Compensation Act and the court erred in not directing a verdict for defendant on its fourth plea; (6) the court erred in taking from the jury the consideration of the third plea and failing to submit to the jury the questions of agency and control therein raised; (7) error in entering judgment on the verdict.

■ A motion for a new trial in the federal court is a matter directed to the discretion of the trial court, and the failure of the court to grant such a motion is not assignable error. This is so well established it is unnecessary to cite authorities.

■ As to the alleged error with reference to the court's refusal to give five peremptory

instructions at the close of plaintiff's evidence, and four at the close of all the evidence, it might be that the court erred in not giving the peremptory instruction asked as to count 5 at the close of plaintiff's evidence. But, inasmuch as the court did grant the peremptory instruction as to it at the close of all the evidence, the error committed was cured before the cause was submitted to the jury. ·

■ An examination of the record shows that there was considerable competent evidence submitted to the jury on behalf of the plaintiff tending to sustain each of the first four counts, and this condition existed both at the close of plaintiff's testimony and at the close of all the testimony. The instructions were properly denied in both instances, except as to count 5, and that error was cured as above described. ·

■ The failure of the court to find plaintiff's intestate guilty of contributory negligence under defendant's second plea cannot be held to be reversible error in this case. The plea was a general one, simply charging that plaintiff's· intestate was guilty of negligence which contributed to the injuries complained of. The only facts in the record relied upon by appellant were acts of omission rather than commission. It is contended that the engineer should have put on the brakes and shut off his power before the truck ran into the motorcar, causing the injury and death, or that there was something Bansau did not do which he might have done which would have avoided the collision. When this contention is considered in the light of the fact that the train had the right of way and the engineer knew that fact, he had a right to assume that the truck would stop before it reached the railroad track, and it probably did not become apparent that it would not, more than a very few seconds before the impact.

At the conclusion of the charge given by the trial court, when asked if there were any further suggestions, counsel for appellant said: "In the definition of negligence of which the agent of the defendant might be guilty of you used the word, his failure to do some act of any ordinary reasonable prudent man would do. Will the court instruct the jury that also the engineer, Mr. Bansau would likewise be guilty of negligence if he failed to do something the ordinary reasonable man would do under the circumstances." To which the court replied: "I thought I had that in my instructions. If I did not, that is the law gentlemen" (speaking to the jury).

■■ The contributory negligence of an injured person in an action of this character is a matter that must be pleaded and proved by the defendant. In other words, it is a defense which must be maintained by the defendant, under the issues in this case, to the satisfaction of the jury. The question of contributory negligence is always one of fact to be submitted to the jury, unless the undisputed evidence is so conclusive that all reasonable minds would reach the same conclusion on the question. Chicago City Ry. Co. v. Nelson, 215 Ill. 436, 440, 74 N. E. 458; Chicago & Joliet E. R. R. Co. v. Wanic, 230 Ill. 530, 82 N. E. 821, 15 L. R. A. (N. S.) 1167. It is clear that the facts in this case did not bring it within the exception to the rule above described.

■ The contention that the Illinois Workmen's Compensation Act (Smith-Hurd Ann. St. c. 48, § 138 et seq.) had taken away plaintiff's cause of action under Smith-Hurd Ann. St. Ill. c. 70, §§ 1, 2, paragraphs 1 and 2 of chapter 70, Cahill's Rev. St. Illinois 1933 (commonly known as the Lord Campbell's Act), cannot be sustained, if the case comes within the exclusive control of the federal government.

Appellee took issue with appellant on its fourth plea, charging that appellee's intestate and appellant were under the Illinois Workmen's Compensation Act. At the conclusion of the trial, the court charged the jury very fully upon this subject, explaining lucidly what intrastate and interstate commerce are and the effect of holding one way or the other in the case. The court then concluded its charge on this branch of the case in these words: "In other words, the issue which you have to determine as raised by the said plea of the defendant is whether or not the train which was then and there being driven by the deceased, William R. Bansau was carrying interstate traffic or business, or whether it was carrying intra-state business only. If it was carrying intra-state business only, then the plea is good and the action must fail. If it was carrying interstate business, then the plea must fail and is no defense to the plaintiff's action."

At the conclusion of the charge, upon being asked for further suggestions, counsel for appellant answered there were none, "Except in the definition of interstate commerce, I believe it should refer to a continuous movement." To which the court replied, "That's true. By interstate commerce is meant a continuous movement from one state to another. When passengers or express or freight move

from one state to another so as to constitute interstate commerce the movement must be a continuous one." With this supplemental explanation neither side excepted to the charge, and both are bound thereby.

There was substantial evidence tending to support the claim that the train at the time in question had at least one passenger from out of the state of Illinois and there was a considerable amount of interstate express handled by the expressman. The jury was warranted in finding against appellant on that issue.

It is complained that the trial court erred in taking from the jury the consideration of the third plea and failing to submit to the jury the lack of agency and control of the truck therein raised. The plea charged that defendant (appellant) was not the owner of, or in control of, the truck in question. All of the evidence tended to show that the driver of the truck was the agent and servant of appellant and at the time of the accident it was being used in the prosecution of appellant's business. It is shown that the legal title to the truck was in the driver, but it was necessary for him to have, use, and control such a vehicle in the prosecution of his employer's business. The mere fact of lack of technical ownership or title in appellant would be no defense in this case, and the trial court properly took its consideration from the jury.

The questions of negligence and contributory negligence involving controverted facts, as shown by the record in this case, are always proper ones for a jury, and the court properly entered judgment on the verdict, and it must be, and is, affirmed.